[No. A039038. First Dist., Div. Four. Jan. 19, 1989.]

DAON CORPORATION et al., Cross-complainants and Appellants,
v.
PLACE HOMEOWNERS ASSOCIATION, Cross-defendant and
Respondent.

## COUNSEL

Elliot L. Bien, Kevin G. McCurdy and Bronson, Bronson & McKinnon for Cross-complainants and Appellants.

James R. Ritchie, Scott D. Mayer and McGlynn, McLorg & McDowell for Cross-defendant and Respondent.

## OPINION

**POCHÉ, J.**—Defendants and cross-complainants, Daon Corporation and Warmington-Daon Venture (hereafter Daon), appeal from an order dismissing their cross-complaint after a general demurrer by cross-defendant, The Place Homeowners Association, was sustained.[1]

Because a demurrer admits all material facts properly pled (*Glaire* v. *La Lanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357]), we recite the facts as set forth in the pleadings. Defendants were owners of an apartment complex, Peninsula Place or The Place, in San Mateo, which they converted to condominium units. By a set of covenants, conditions and restrictions (CC & R's) the defendants created Peninsula Place Homeowners Association (Association) which is responsible for operating, maintaining and repairing the common areas in the project. The Association is organized as a California nonprofit corporation.

---

[1] We address the appealability of this order in the body of the opinion at page 1455.

On November 4, 1985, the Association filed a complaint naming Daon and various other entities as defendants. By a second amended complaint of October 21, 1986, the Association sought to recover from Daon on causes of action for breach of contract, breach of implied warranty, negligence, intentional and negligent misrepresentation, strict liability, and breach of fiduciary duty. The complaint alleges, among other things, that Daon is liable for foundation, plumbing and other structural defects in the complex and for failing to establish and maintain an adequate repair and maintenance fund for the Association.

Daon's answer to the second amended complaint was filed December 16, 1986. Daon made a general denial of the various allegations against it and raised various affirmative defenses, including allegations that the Association was responsible for the problems in the complex and that Daon was entitled to indemnification from the Association for that portion of the injury which was attributable to the Association's conduct.

On the same day Daon filed its answer it also filed a cross-complaint naming among numerous defendants the Association. By its cross-complaint Daon sought "total and/or partial equitable indemnity" in the event it was found liable to plaintiff Association for "defective design, inspection, budgeting, construction, repair and/or material and/or concealment or negligent misrepresentation. The Association's general demurrer to the cross-complaint was sustained without leave to amend on April 17, 1987.

On April 21, 1987, the Association sent notice of the ruling on the demurrer. ■ ■ ■ ■ The record includes an undated, unsigned, and unfiled order[2] purporting to dismiss Daon's cross-complaint as to the Association pursuant to Code of Civil Procedure section 581d.[3] On June 19,

---

[2] The order provides in pertinent part that "the cross-complaint filed by the Warmington-Daon Venture and the Daon Corporation against The Place Homeowners' Association shall be and is hereby dismissed, such order of dismissal to constitute a judgment on said cross-complaint in favor of The Place Homeowners' Association in that said cross-complainants' claims against it in its alleged capacity as an independent tortfeasor are hereby terminated."

The parties have elected to proceed under rule 5.1. That rule permits them to supply a joint appendix in lieu of a clerk's transcript, but it does not allow the parties to forgo submitting a copy of the judgment appealed from. (Cal. Rules of Court, rules 5, subd. (d)(3) and 5.1, subd.(b)(1).)

The superior court has provided us with a copy of an order dismissing the cross-complaint signed on June 19, 1987. We hereby take judicial notice of that document. (Evid. Code, § 452, subd. (d)(1).)

[3] Unless otherwise noted all subsequent statutory references are to the Code of Civil Procedure.

Section 581d provides in pertinent part: "A written dismissal of an action shall be entered in the clerk's register and is effective for all purposes when so entered. [¶] All dismissals

1987, the order dismissing the cross-complaint was signed and Daon filed a notice of appeal from "the judgment dismissing their cross-complaint." The appeal was timely taken.

## DISCUSSION

As we have intimated there is substantial question whether this is an appealable order. Before we can resolve what is normally a threshold question, however, we must examine in some detail the pleadings in this case.

Daon contends the trial court erred in sustaining the Association's general demurrer to its cause of action for equitable indemnity. Daon maintains that the Association has two capacities—one as a "surrogate plaintiff" for the owners of the individual condominium units and another in its own capacity as a cross-defendant. Thus, Daon argues the plaintiff Association is not the real party in interest, but merely sues on behalf of the owners of the condominium. As cross-defendant, however, the Association is the real party in interest because it is being sued for negligently performing its duties owed the condominium owners under the CC & R's.

This argument was implicitly rejected by the trial court when it granted the Association's general demurrer. The Association demurred on grounds that it was being named as "a cross-defendant in the same capacity as it has filed suit as plaintiff." The Association maintained that its negligence, if any, will, under the principles of comparative negligence, be determined in the underlying suit and will proportionately reduce Daon's liability to it.

When the Association filed its second amended complaint it expressly asserted that its standing to sue was derived from section 374. That section provides "An association established to manage a common interest development shall have standing to institute, defend, settle, or intervene in litigation, arbitration, mediation, or administrative proceedings in its own name as the real party in interest and without joining with it the individual owners of the common interest development, in matters pertaining to the following: [¶] (a) Enforcement of the governing documents. [¶] (b) Damage to the common areas. [¶] (c) Damage to the separate interests which the association is obligated to maintain or repair. [¶] (d) Damage to the separate interests which arises out of, or is integrally related to, damage to the common areas or separate interests that the association is obligated to maintain or repair."

ordered by the court shall be in the form of a written order signed by the court and filed in the action and such orders when so filed shall constitute judgments . . . ."

Below and on appeal the Association maintains that because it invokes section 374 in its complaint it filed suit solely in its associational capacity, as manager of the complex. Thus, it argues that its action against Daon seeks recovery only for injury to common areas or for injury to the separate interest which derives from the Association's duty to maintain and repair. Daon counters that the Association is not the real party in interest, but that it, by virtue of the narrow procedural exception created by section 374, is merely a surrogate plaintiff representing the interests of the homeowners.[4] Daon asserts "The Associations's *own* interests are only impacted on the cross-complaint, wherein it is alleged that the Association negligently performed its duties to the owners."

What capacity or capacities the Association acts in as plaintiff is critical. We turn to its second amended complaint. It does, indeed, allege that the Association derives its standing to sue from section 374. However, many of the allegations in the complaint involve injuries to individual owners as well as to the Association.

For example, the fifth cause of action for intentional misrepresentation alleges that "[i]ndividual members of Plaintiff and Plaintiff would not have purchased, nor accepted the conveyance of said condominium units sold by Defendants, . . ., nor taken possession thereof, but for the representations made to individual members of Plaintiff by said Defendants, in that the failure by Defendants to improve and adequately repair and replace the said construction and related systems would have and has, irreparably injured the enjoyment, safety, and welfare of Plaintiff and its members, in their use of the subject condominium units . . . ." From the face of the complaint it is clear, that despite the Association's attempt to characterize the suit as one merely to vindicate injuries to it, injury to the individual members of the Association is also alleged.

Daon's point is well taken. The Association is really wearing two hats. Its complaint not only alleges injuries suffered by its individual members, but also injuries purely to the Association which arise from its duty to the unit owners to "manage, maintain, and repair" common areas.

■ Section 428.10, subdivision (b) permits "[a] party against whom a cause of action has been asserted in a complaint or cross-complaint" to file a cross-complaint setting forth "[a]ny cause of action he has against a person

---

[4]Both sides devote substantial portions of their briefs to the judicial background against which section 374 was enacted. We have taken judicial notice of various documents relating to the legislative history of the section. However, because the scope of our inquiry is limited to whether this order is appealable, we do not reach the broader questions of statutory interpretation which the parties raise.

alleged to be liable thereon, whether or not such person is already a party . . . ." Under this section a defendant may file a cross-complaint against any person from whom the defendant seeks total or partial indemnity on the basis of comparative fault. (*American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 584, 607 [146 Cal.Rptr. 182, 578 P.2d 899].)

 The Association's eighth cause of action for strict liability against defendant Daon alleges that the Association "has been damaged and will continue to be damaged by the expenditure of certain monies for repair and/or replacement of the [construction] defects . . . ." In its cross-complaint Daon seeks indemnity for that portion of the injury which is the "direct and proximate result of the wrongful conduct" of the Association. Daon has, under the rule set out in *American Motorcycle,* cross-complained against the Association for indemnity on the theory that the Association's own negligence in performing its management duties makes it a joint tort-feasor. In this context the Association acts, sues, and is liable solely in its own right and not as a surrogate for its members, the unit owners. Thus, because the Association's second amended complaint states causes of action to which Daon may appropriately seek partial or total indemnity from the Association, Daon's cross-complaint against the Association was proper.

Because the Association is a plaintiff both in its capacity as the "management entity" of the condominium *and* in its capacity as a representative of individual unit owners, but is a cross-defendant only in its management capacity, the premise upon which the Association demurred is faulty. The Association which is named as a cross-defendant is the same entity,[5] but is not always acting in the same capacity as the Association as plaintiff.

### APPEALABILITY

 We have deferred until now discussion of whether or not the order of dismissal is appealable because the answer to that inquiry turns upon whether or not the dismissal of Daon's cross-complaint constitutes a final adjudication of the rights and duties of the Association in its capacity as manager of the common areas.

---

[5] Compare *Jaffe* v. *Huxley Architecture* (1988) 200 Cal.App.3d 1188, 1192 [246 Cal.Rptr. 432], which holds that developers who are sued by an incorporated homeowner's association may not seek equitable indemnity by cross-complaint from the association's individual directors because the directors' acts or omissions in managing the association are "[i]n a legal sense . . . the conduct of the Association itself." In *Jaffe* the cross-complaint would have undermined the corporate entity of the homeowner's association.

Here Daon's cross-complaint names the Association as cross-defendant, not individual directors. Accordingly, the policy reasons against permitting the cross-complaint as set out in *Jaffe* do not pertain.

■ California follows the single judgment rule. Ordinarily an order striking a cross-complaint against a plaintiff is not considered sufficiently independent to permit entry of a separate judgment upon it unless the judgment on the cross-complaint is final as to a specific party. (*Sjoberg* v. *Hastorf* (1948) 33 Cal.2d 116, 118 [199 P.2d 668]; *County of Santa Clara* v. *Support, Inc.* (1979) 89 Cal.App.3d 687, 703 [152 Cal.Rptr. 754]; *Lemaire* v. *All City Employees Assn.* (1973) 35 Cal.App.3d 106, 109 [110 Cal.Rptr. 507].)

■ Daon maintains that this case comes within the exception to the rule. In its view the pleadings consist of a complaint by the plaintiff Association acting solely in its capacity as a representative of the unit owners and a cross-complaint naming the Association solely in its capacity as manager. Thus, Daon argues that the dismissal of the cross-complaint acts to finally adjudicate any rights Daon has against the Association in its managerial capacity. It analogizes to a case where members of a class on whose behalf a representative suit was brought could still challenge denial of their attempt to become interveners in that suit. (*Bowles* v. *Superior Court* (1955) 44 Cal.2d 574, 580-581 [283 P.2d 704].) In that instance, Daon argues, the same plaintiffs sought to act in two different capacities.

Perhaps a more comparable case is that of *Aetna Cas. etc. Co.* v. *Pacific Gas & Elec. Co.* (1953) 41 Cal.2d 785 [264 P.2d 5, 41 A.L.R.2d 1037]. The *Aetna* plaintiff, the insurer of an employer whose employee was injured, sued defendant Bechtel in a cause of action on its own behalf for benefits paid and in a cause of action as statutory trustee for the injured employee. (*Id.* at p. 788.) A demurrer to the cause of action in plaintiff's capacity as a statutory trustee was sustained without leave to amend, and a judgment of dismissal was entered. (*Id.* at p. 786.) The Supreme Court concluded that the judgment was a final judgment and appealable because it constituted "a final determination of the rights of plaintiff *in that capacity* . . . ." (*Id.* at p. 789.)

The difficulty with Daon's argument is that the Association's complaint states claims advanced by the Association in *both* its capacities. Thus, the cross-complaint does not serve as the only vehicle to bring into the lawsuit the Association in its managerial capacity. Nor are the claims raised by Daon in the cross-complaint lost with its dismissal. Daon's answer to the complaint alleges as affirmative defenses the contributory negligence of the Association and seeks "indemnification, either in whole or in part" for damage proximately caused by that negligence. Accordingly, even without the cross-complaint, the Association in its managerial capacity is still a party to the lawsuit, and the claims which Daon seeks to raise against the Association in that capacity are still at issue. An appeal at this point would be premature and violative of the policy underlying the final judgment rule.

In the alternative Daon urges us to treat the matter as a petition for a writ of mandate. Yet it fails to explain any unusual circumstance or peculiarity of this case which would justify or require us to do so.

Because the order appealed from is not appealable we dismiss the appeal.

Anderson, P. J., and Channell, J., concurred.